IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JOHN B. WELLS, JR., *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:03-cv-296 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | |
| COMPANY, *et al.*, | ) | |
|     Defendants. | ) | |

## **MEMORANDUM AND ORDER**

Defendant, The Development Corporation of Knox County (DCKC), has moved the court to dismiss certain portions of plaintiffs' Second Amended Complaint [Doc. 65]. Defendants, Burnett Demolition & Salvage Company, Inc. (Burnett); Barge, Waggoner, Sumner & Cannon, Inc. (BWS&C); S&ME, Inc. (S&ME); and the City of Knoxville (City), have also moved to dismiss certain portions of the plaintiffs' Second Amended Complaint and/or to adopt the motion to dismiss by the co-defendant DCKC [Docs. 67, 73, 122]. Plaintiffs have responded [Docs. 75, 77]. Defendants have replied [Doc. 76]. For the reasons that follow, the motions to dismiss portions of plaintiffs' Second Amended Complaint {Docs. 65, 67, 73, 122] are **GRANTED**.

## **BACKGROUND**

Plaintiffs are owners and/or residents of properties in proximity to the Phillip Reagan (Reagan) residence at 6541 Sevierville Pike, Knoxville, Tennessee. They claim that defendants took contaminated and hazardous materials from the City owned Coster

Shop site and negligently dumped such waste into a sinkhole on Reagan's property that feeds plaintiffs' groundwater; subsequently, contaminants began to appear in the plaintiffs' drinking water, including, *inter alia,* lead, arsenic, diesel fuel derivatives and polychlorinated biphenyls (PCBs). Plaintiffs allege the City hired DCKC to "oversee" the Coster Shop site development, and that DCKC "acted in coordination with co-defendants regarding removal of toxic and/or hazardous materials." They assert Burnett acted as the demolition and salvage contractor, S&ME performed as the environmental consultant, BWS&C was the engineering firm, and Reagan owns the disposal site. Plaintiffs also sue "John Doe Corporation 1-100," and state these defendants will be named as discovery reveals their identities. The complaint alleges that the defendants acted "individually and jointly" and are liable as a group to the plaintiffs.

## **STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) requires the court to construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir. 1990), *cert. denied*, 498 U.S. 867, 111 S.Ct. 182 (1990). A motion to dismiss is directed at the bare allegations of the complaint.

**RES IPSA LOQUITUR**

Plaintiffs allege that the defendants should be found liable for negligence based on the doctrine of *res ipsa loquitur*. The complaint states that "the Defendants in this cause exercised exclusive control over the hazardous substances of the Coster Shop project and the injuries and damages sustained by the Plaintiffs are of such a nature that they would not ordinarily occur in the absence of negligence on behalf of these Defendants."

Plaintiffs relying on *res ipsa loquitur* need not prove specific acts of negligence by a defendant to get their case to the jury. *Summit Hill Assocs. v. Knoxville Utils. Bd.,* 667 S.W.2d 91, 96 (Tenn. App. 1983). They may instead base their case on the circumstances surrounding the injury if common experience indicates "(1) that the injury was probably the result of negligence, even though the exact nature of the negligence is unknown, and (2) that it was probably the defendant who was the negligent person." *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d at 426 (holding that *res ipsa loquitur* "permits a fact-finder to infer that a defendant was negligent when the circumstances of the injury would cause a reasonable person to conclude that the injury would not have occurred had it not been for the defendant's negligence").

A plaintiff is not required to eliminate all other causes of his or her injury to invoke the *res ipsa loquitur* doctrine. *Roberts v. Ray,* 45 Tenn. App. 280, 284, 322 S.W.2d 435, 437 (1958). All that is required is evidence from which reasonable persons can say that, on the whole, it is more likely that negligence attributable to the defendant

3

caused the plaintiff's injury.

Plaintiffs intending to rely on the doctrine must establish three things. First, plaintiffs must identify how the injury occurred. Second, plaintiffs must demonstrate that the event causing the injury is of a kind which does not ordinarily occur in the absence of negligence. Third, "[t]he plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control...." *Seavers v. Methodist Med. Ctr.,* 9 S.W.3d 86, 91 (Tenn. 1999).

DCKC argues that it did not have "exclusive control" over Burnett, the defendant who actually dumped the Coster Shop material into the sinkhole, and therefore, cannot be liable under the doctrine of *res ipsa loquitur*. DCKC asserts the doctrine demands actual physical control over an instrumentality.

The court notes that the "exclusive control" element, if read too literally, is overly restrictive. Tennessee cases have indicated that this state's courts do not view "exclusive control" as indispensable to the application of the *res ipsa loquitur* doctrine. *See Coca Cola Bottling Works, Inc. v. Crow*, 200 Tenn. 161, 166, 291 S.W.2d 589, 591 (1956); Restatement (Second) of Torts § 328 D, cmt. g with approval. The Tennessee Supreme Court has noted as follows:

> Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a *res ipsa loquitur* case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.

4

*Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. 199, 208, 396 S.W.2d 351, 356 (1965).

DCKC argues that this court should simply ask itself, "Could the injury here have occurred without [DCKC's] negligence?" Defendants contend the answer is that the injury could have happened in one of many ways. For example, the environmental firm could have been negligent in analyzing the material, the demolition company could have been negligent in deciding where to dump the waste, or Reagan might have mislead the other defendants regarding the dump site. Yet unless the court can say that the injury could not have occurred without DCKC's negligence, defendants claim *res ipsa loquitur* does not apply.

*Res ipsa loquitur* is a rule of evidence, not a rule of law. *Quinley v. Cocke*, 183 Tenn. 428, 438, 192 S.W.2d 992, 996 (1946). It is intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence, *Provident Life*, 217 Tenn. at 208, 396 S.W.2d at 356, by providing a specialized vehicle for considering circumstantial evidence in negligence cases. *Poor Sisters of St. Francis v. Long*, 659, 663 (1950). It permits, but does not require, a fact-finder "to infer negligence from the circumstances of an injury." *Seavers*, 9 S.W.3d at 91; *Shivers v. Ramsey*, 937 S.W.2d 945, 949 (Tenn. App. 1996).

The court finds that even under a relaxed interpretation of "exclusive control," the pleadings do not allow the use of the doctrine of *res ipsa loquitur* in this case. Too

5

many questions remain as to who knew what and when, who were the decision-makers, and who exercised control over and knew of the waste disposal issues. Construing the complaint in the light most favorable to the plaintiffs, and accepting all of the complaint's factual allegations as true, the court finds plaintiffs have not made a valid claim under the doctrine of *res ipsa loquitur* as to DCKC or the other defendants.

**NEGLIGENT ENTRUSTMENT**

DCKC claims that plaintiffs have failed to properly plead any claim for negligent entrustment. DCKC states that there "is no allegation that The Development Corporation 'entrusted' the chattel to any other person or party, [nor] that The Development Corporation [did this with knowledge that the person or party was incompetent] to 'use' the material, or that such entrustment proximately caused the injury." Plaintiffs, however, argue that "Defendants are liable under the doctrine of negligent entrustment and/or negligent hiring." They contend their assertions must be taken as true for purposes of this motion.

The elements of a cause of action for negligent entrustment in Tennessee are 1) an entrustment of a chattel, 2) to a person incompetent to use it, 3) with the knowledge that the person is incompetent, and 4) that is the proximate cause of injury or damage to another. *Concklin v. Holland*, 138 S.W.3d 215, 222 (Tenn. App. 2004); *see* Restatement (Second) of Torts § 390 (1964). The complaint alleges that DCKC was "responsible for oversight of the Coster Shop site development [and] at all times herein material, DCKC acted in coordination with co-defendants regarding removal of toxic

6

and/or hazardous materials." Plaintiffs assert that considering DCKC was responsible for overseeing the project and certain agents who were entrusted with the disposal of hazardous debris during the project negligently disposed of such debris, thereby harming plaintiffs, they have properly stated a claim for negligent entrustment.

Assuming that the "chattel" at issue is the material removed from the Coster Shop site, or perhaps merely the alleged harmful substances within the material, defendants assert there are no allegations to the effect that DCKC had control of the chattel, "entrusted" the chattel to any other person or party, did this with knowledge that the person or party was incompetent to "use" the material, or that such entrustment proximately caused any injury. The court agrees with the defendants. Plaintiffs have failed to properly state a claim for negligent entrustment, as they have not adequately alleged incompetence on the part of any of the defendants. Therefore, the claim is **DISMISSED** as to all defendants.

**NEGLIGENT HIRING**

Plaintiffs claim that when construing the language of the complaint in a light most favorable to them, oversight of the project would have included the hiring of certain agents and subcontractors. Defendants claim, however, that plaintiffs have made a conclusory allegation of negligent hiring. In Tennessee, the elements of the tort of negligent hiring are 1) evidence of unfitness for the particular job, 2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others, and 3)

7

evidence that the prospective employer knew or should have known that the historical criminality of the applicant would likely be repetitive. *Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258 at *3 (Tenn. App. April 4, 1996).

Defendants contend there are no allegations that any employee of DCKC took any action whatsoever, hired any person in connection with the project, or hired the other defendants. To the contrary, plaintiffs themselves allege that the City "was responsible for hiring contractors to perform desired improvements"; specifically, plaintiffs note that the City hired Burnett and S&ME, and that Burnett "hired" or contracted with Reagan. Further, defendants assert there is no allegation that DCKC hired any person with the knowledge that the person was unfit for any job or was likely to cause harm to any other person. Taking all the factual allegations as true, the court agrees with defendants that plaintiffs have failed to state a claim for negligent hiring as to all defendants. Accordingly, the claim is **DISMISSED**.

**ENTER:**

       **s/Thomas W. Phillips**
**UNITED STATES DISTRICT JUDGE**